# In the United States Court of Federal Claims

No. 10-213C

(Filed March 16, 2012)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * | *  Contracts; subject matter |
| | *  jurisdiction, motion to dismiss, |
| **TOWNSHIP OF SADDLE BROOK,** | *  RCFC 12(b)(1); claim founded |
| | *  upon an express or implied-in- |
| Plaintiff, | *  fact contract with the United |
| | *  States, 28 U.S.C. § 1491(a)(1) |
| v. | *  (2006); impact of law-of-the- |
| | *  case doctrine on transferor |
| **THE UNITED STATES,** | *  court's determination that |
| | *  jurisdiction lies in the United |
| Defendant. | *  States Court of Federal Claims; |
| | *  transfer statute, 28 U.S.C. § |
| * * * * * * * * * * * * * * * * * * * * * * | *  1631 (2006). |

Deborah M. Gross-Quatrone, Saddle Brook, NJ, for plaintiff.

Devin A. Wolak, Washington, DC, with whom was Acting Assistant Attorney General Stuart F. Delery, for defendant. James G. Palmer, Assistant District Counsel, U.S. Army Corps of Engineers, New York District, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

  This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. The issue for decision is whether plaintiff has alleged the existence of an implied-in-fact contract between a municipality and the New York District of the United States Army Corps of Engineers (the "Corps") whereby the Corps promised to undertake a flood-control project along the Saddle River. Argument is deemed unnecessary.

**FACTS**

I. Background

The following facts are undisputed. 1/ The Township of Saddle Brook ("plaintiff") is a municipality in northern New Jersey that is situated along the banks of the Saddle River and that has been plagued with regular flooding. The Corps has been aware of the flooding for decades, and, to minimize the destruction of property resulting from the recurrent flooding, it has designed and implemented flood-control projects to address the flooding. 2/ On January 28, 1986, the Secretary of the United States Army prepared a report entitled "Lower Saddle River Flood Control," which proposed a flood-control project on the Saddle River. See Def.'s Br. filed Sept. 23, 2011, at 6; Declaration of Daniel Falt, Dec. 1, 2009, ¶ 2. Pursuant to this proposal, Congress authorized the Lower Saddle River Project (the "project") on November 17, 1986, in section 401(a) of the Water Resources Development Act of 1986, Pub. L. No. 99-662, § 401(a), 100 Stat. 4082 (current version at 33 U.S.C. §§ 2201-2311 (2006)). Falt Decl. ¶ 2. At the time the project was authorized, its projected cost was $36,500,000.00. Id. The New Jersey Department of Environmental Protection (the "NJDEP")—a nonfederal sponsor of the project—agreed to pay $10,700,000.00. Id.

A Project Management Plan (the "plan") created in August 1993 established a schedule whereby preconstruction engineering and design would take place from 1988 to 1996; land acquisition, contract preparation, and contract award, from 1996 to 1998; and construction, from 1998 to 2003. Id. ¶ 3. While the project was underway in the mid-1990s, the NJDEP determined that the project area was contaminated with hazardous waste. Id. ¶ 4. Cleanup costs were estimated to be $28,000,000.00 to $36,000,000.00 and were to be borne by the State of New Jersey. Id. The project was put on hold between 1997 and 2003 while the state considered its options. Id.

In February 2005 the Corps and the NJDEP determined that the project must be reevaluated because project conditions had changed dramatically. Id. ¶ 5. Although the reevaluation was expected to be completed in 2011, that deadline was extended; the reevaluation report will be subjected to peer review beginning in May 2012. See Def.'s Br.

---

1/ In fact, in its responsive brief, plaintiff reproduced word-for-word a portion of the Nature of the Case and the entirety of the Statement of Facts from Defendant's Motion To Dismiss.

2/ Plaintiff does not allege that any extant Corps projects on the Saddle River have caused or contributed to the flooding of the Township of Saddle Brook.

filed Sept. 23, 2011, at 7. If the reevaluation report concludes that the project's benefits will exceed its costs—inclusive of cleanup costs—the NJDEP will be asked to begin cleanup efforts. Falt Decl. ¶ 5. As of 2008 the project was expected to cost approximately $113,250,000.00—exclusive of cleanup costs—likely exceeding the mid-1990s estimate. Def.'s Br. filed Sept. 23, 2011, at 7 n.2. Neither Congress nor the New Jersey legislature has authorized full funding to cover these costs. Id.

II. Procedural history

On May 15, 2009, plaintiff filed suit in the United States District Court for the District of New Jersey against the United States, the Corps, the NJDEP, and 65 John Does, alleging negligence, breach, and bad faith for failure to control flooding along the Saddle River. See Compl. at 1, 4-7, Township of Saddle Brook v. United States, No. 2:09-cv-02373-JLL-CCC (D.N.J. May 15, 2009), ECF No. 1 (the "Transfer Compl."), Def.'s Br. filed Sept. 23, 2011, at App. A5, A8-11. On January 19, 2010, the district court entered an order dismissing plaintiff's negligence claim and transferring plaintiff's "contract claims"—which are identified as plaintiff's breach and bad-faith claims against the United States—to the United States Court of Federal Claims. See Order at 5, Township of Saddle Brook v. United States, No. 2:09-cv-02373-JLL-CCC (D.N.J. Jan. 19, 2010) (the "Transfer Order"), Def.'s Br. filed Sept. 23, 2011, at App. A17. The matter was transferred on April 7, 2010, but it was dismissed without prejudice on June 22, 2010, after plaintiff's counsel failed to show cause as to why he had not sought admission to the bar of the Court of Federal Claims. See Order entered June 10, 2010. Judgment entered on June 22, 2010.

Because plaintiff subsequently obtained new counsel who completed the admissions process in April 2011, the order of dismissal was vacated on May 23, 2011. Plaintiff filed its Amended Complaint in the Court of Federal Claims on July 18, 2011. This complaint is identical in all material respects to plaintiff's district-court complaint, except that it omits a claim for negligence and no longer names the NJDEP and John Does as defendants. See Am. Compl. filed July 18, 2011. Plaintiff's pending complaint alleges that, following Tropical Storm Floyd in 1999, the flooding worsened, creating a "deplorable situation" for plaintiff, which has incurred millions of dollars of losses. Am. Compl. ¶¶ 4, 6. 3/ Plaintiff further contends that the United States exercises exclusive control and management over the Saddle River and that the Corps makes all decisions relating to maintenance and repair of the river. Id. ¶ 2. Specifically, plaintiff alleges that the Corps "made numerous promises to remedy the flooding issues of the Saddle River," id. ¶ 12, and "entered into an agreement

---

3/ The pages in plaintiff's Amended Complaint, as filed, are not in sequential order. The second page of the Amended Complaint actually is included as the fifth page.

[with plaintiff] to remedy the flooding issues of the Saddle River Basin," id. ¶ 17.  Plaintiff relies on the alleged promises and alleged agreement to invoke the court's jurisdiction and seeks an order of specific performance ordering the Corps to undertake necessary repairs to the Saddle River Basin; civil penalties for past flood damage; and court costs and attorneys' fees.  See id. ¶¶ 23-25.

On September 23, 2011, defendant moved to dismiss pursuant to RCFC 12(b)(1), contesting jurisdiction over plaintiff's claims.  Plaintiff responded on December 20, 2011, and defendant replied on January 6, 2012.

## DISCUSSION

I.  Standards for a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction

Jurisdiction must be established before the court may proceed to the merits of a case.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998).  Federal courts are presumed to lack subject matter jurisdiction unless it is affirmatively indicated by the record; therefore, it is the plaintiff's responsibility to allege facts sufficient to establish the court's subject matter jurisdiction.  Renne v. Geary, 501 U.S. 312, 316 (1991); DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) ("[I]t is settled that a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction.").  If the jurisdictional facts alleged in the complaint are disputed, "the . . . court may consider relevant evidence in order to resolve the factual dispute."  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); see Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) (holding that "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged").

Once the court's subject matter jurisdiction is questioned, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. . . . [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."  Reynolds, 846 F.2d at 748 (citation omitted); accord M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010).  However, when a federal court hears a jurisdictional challenge, "its task is necessarily a limited one."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id.

Defining the jurisdictional reach of the Court of Federal Claims, the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006), "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and . . . waives the Government's sovereign immunity for those actions." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). The Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); see also Trauma Serv. Group v. United States, 104 F.3d 1321, 1324-25 (Fed. Cir. 1997) ("Jurisdiction based on contract 'extends only to contracts either express or implied in fact, and not to claims on contracts implied in law.'" (quoting Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996))).

Fisher is a seminal case in which the United States Court of Appeals for the Federal Circuit sought to clarify Tucker Act jurisprudence, which had blended the questions of the Court of Federal Claims' jurisdictional grant with the merits of the claim. "This mixture has been a source of confusion for litigants and a struggle for courts." Fisher, 402 F.3d at 1172. Because the Tucker Act does not provide any substantive causes of action, "a plaintiff must identify a separate source of substantive law that creates the right to money damages" "in order to come within the jurisdictional reach and the waiver of the Tucker Act." Id.; see also United States v. Mitchell, 463 U.S. 206, 216-17 (1983). In Tucker Act cases, this requirement has often been interpreted to mean that the source must be "'money-mandating.'" See Fisher, 402 F.3d at 1172. The Tucker Act contemplates generally three categories of money-mandating claims: (1) "claims alleging the existence of a contract between the plaintiff and the government," (2) claims in which "'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum,'" and (3) claims premised on "'money [having] not been paid but [in which] the plaintiff asserts that he is nevertheless entitled to a payment from the treasury.'" Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (quoting Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1007-08 (Ct. Cl. 1967)). In its Amended Complaint, plaintiff relies on the first category to demonstrate a right to recover money damages from the Government.

II. Timing of a jurisdictional motion

Plaintiff deems defendant's motion untimely because defendant answered the Amended Complaint. Pl.'s Br. filed Dec. 20, 2011, at 3. The issue of jurisdiction may be raised at any time. Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008). RCFC 12(b) provides that a motion to dismiss for lack of subject matter jurisdiction must be made before the moving party files a responsive pleading, and, contrary to plaintiff's assertion, defendant timely filed its motion in lieu of an answer. Plaintiff

5

further contends that the court should refrain from deciding defendant's motion because "the jurisdictional facts are interwoven with the facts essential to the merits of Plaintiff's case and as such, 'the entire factual dispute is appropriately resolved only by a proceeding on the merits.'" Id. at 5 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Plaintiff's reading of Adams is exaggerated. The United States Court of Appeals for the Fourth Circuit explained that, in arguing a motion to dismiss, a defendant may mount a challenge that the complaint is jurisdictionally deficient because it fails to set forth facts on which jurisdiction can be based or that the jurisdictional allegations alleged in the complaint are untrue. Adams, 697 F.2d at 1219. Should the defendant's challenge proceed in the latter fashion, the court may conduct an evidentiary hearing and weigh the evidence to determine if sufficient facts exist on which to base jurisdiction. Id. The Fourth Circuit noted that the weighing of evidence "does not usually present a serious problem except in those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute." Id. The precedent in the Federal Circuit is not to the contrary, see Reynolds, 846 F.2d at 747; Moyer, 190 F.3d at 1318, and, in any case, Adams is inapposite because defendant does not challenge that the jurisdictional facts are untrue; rather, defendant challenges that the facts are insufficient to establish jurisdiction. Having determined that defendant timely filed its motion, the court proceeds to address defendant's substantive arguments.

III. Effect of transferor court's determination that jurisdiction lies in
the Court of Federal Claims

Defendant argues that statements made in the district court's Transfer Order are not the law of the case and do not establish the Court of Federal Claims' jurisdiction over this matter. Def.'s Br. filed Sept. 23, 2011, at 13. Defendant explains that, although the Transfer Order repeatedly refers to plaintiff's breach and bad-faith claims as contract claims against the United States, it did so in characterizing plaintiff's causes of action and did not make any findings as to whether or not a contract existed between the parties. See Transfer Order at 2-3, 5, Def.'s Br. filed Sept. 23, 2011, at App. A14-15, A17. Despite the law-of-the-case doctrine, the Court of Federal Claims is obligated to determine its own jurisdiction, even when it receives a matter by transfer from a federal district court. Def.'s Br. filed Sept. 23, 2011, at 13 (citing Hicks v. United States, 23 Cl. Ct. 647, 651-52 (1991) (undertaking to determine whether subject matter jurisdiction existed following transfer of matter from United States District Court for Western District of Kentucky to United States Claims Court)).

Plaintiff responds that the district court decision is the law of the case and therefore has binding effect on this court. Pl.'s Br. filed Dec. 20, 2011, at 4. Plaintiff reasons that,

6

if the federal district court judge had determined that the complaint contained frivolous allegations, he would have dismissed the entire complaint—not solely plaintiff's negligence claim. Id. at 5. Instead, the district court judge transferred plaintiff's breach and bad-faith claims, thereby implicitly indicating that plaintiff's complaint contained viable contract claims within the jurisdiction of the Court of Federal Claims. Id. Alternatively, plaintiff requests retransfer to the district court if this court concludes that plaintiff's claims should not be pursued in the Court of Federal Claims. Id. at 5-6.

Mere transfer to the Court of Federal Claims does not confer jurisdiction. Marshall N. Dana Constr., Inc. v. United States, 229 Ct. Cl. 862, 865 (1982). The court must decide its own jurisdiction and cannot have it conferred by any other court. Diamond v. United States, 657 F.2d 1194, 1197 (Ct. Cl. 1981). Jurisdiction in this case is premised on the existence of a contract—express or implied-in-fact—between plaintiff and the Corps. The law-of-the-case doctrine contemplates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). It authorizes a court to "refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." Suel v. Sec'y of Health & Human Servs., 192 F.3d 981, 985 (Fed. Cir. 1999). Law of the case is a judicially created doctrine, preventing parties from getting a second "bite at the apple" and "operat[ing] to protect the settled expectations of the parties and promote orderly development of the case." Id. at 985 (internal quotation marks omitted). The doctrine only applies "to issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation." The Toro Co. v. White Consol. Indus. Inc., 383 F.3d 1326, 1335 (Fed. Cir. 2004).

In this matter the jurisdictional premise underlying the district court's decision—that plaintiff pleaded contract claims—does not foreclose the Court of Federal Claims from determining its jurisdiction, despite having received the matter by transfer from a federal district court. See Smith v. Sec'y of the Air Force, 855 F.2d 1544, 1547-48 (Fed. Cir. 1988) (discussing Christianson in the context of examining jurisdiction of transferred case). The district court did not decide the question of this court's jurisdiction because it merely characterized plaintiff's claims as contract claims. More significantly, Federal Circuit precedent authorizes this court to examine whether or not it possesses subject matter jurisdiction over a matter even when it has received the matter by transfer from a federal district court. See Awad v. United States, 301 F.3d 1367, 1375 (Fed. Cir. 2002) (affirming district court's transfer order to Court of Federal Claims, while authorizing transferee court to decide "in the first instance" whether it has jurisdiction); Aetna Cas. & Sur. Co. v. United States, 655 F.2d 1047, 1051 (Ct. Cl. 1981) ("Transfer of this case from the district court does not found jurisdiction here, and if these claims are not within one of the categories enumerated by the Tucker Act, the petitions must be dismissed." (citations omitted)); see

also Ala. Hosp. Ass'n v. United States, 656 F.2d 606, 614 (Ct. Cl. 1981) (stating that earlier case cannot be accorded effect as law of the case or precedent regarding existence of subject matter jurisdiction). Thus, the district court's transfer of the matter to this court does not establish that subject matter jurisdiction is proper in the Court of Federal Claims.

IV.  Determination that jurisdiction is lacking when plaintiff has made insubstantial allegations based on an implied-in-fact contract

Defendant next contends that the court must find jurisdiction wanting because plaintiff cannot demonstrate that a contract exists. Def.'s Br. filed Sept. 23, 2011, at 14. The Tucker Act authorizes the court to entertain matters based on express or implied-in-fact contracts; however, as noted previously, the Tucker Act does not create a substantive right to money damages from the Government. Defendant thereby deduces that, for jurisdiction to exist, plaintiff must allege a contract that permits plaintiff to recover monetary relief. See Def.'s Br. filed Sept. 23, 2011, at 15 (citing Martinez v. United States, 48 Fed. Cl. 851, 856 (2001)).

According to defendant, two averments in the Amended Complaint purport to allege the existence of a contract between the parties: paragraph 12 states that the Government "'made numerous promises to remedy the flooding issues of the Saddle River,'" and paragraph 17 alleges that the Government "'entered into an agreement to remedy the flooding issues of the Saddle River Basin.'" Def.'s Br. filed Sept. 23, 2011, at 15 (quoting Am. Compl. ¶¶ 12, 17). Plaintiff, however, conceded in its response to defendant's motion that no written contract exists between the parties, see Pl.'s Br. filed Dec. 20, 2011, at 3; accordingly, jurisdiction in this court must be based on an implied-in-fact contract, see Def.'s Br. filed Jan. 6, 2012, at 2; see also 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . .").

Defendant explains that an implied-in-fact contract must demonstrate the same elements as an express contract—a mutual intent to contract, an exchange of consideration, an unambiguous offer and acceptance, and a government representative with authority to bind the United States. Def.'s Br. filed Sept. 23, 2011, at 17 (citing City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1434 (Fed. Cir. 1998)). Plaintiff, defendant argues, neither alleges, nor establishes, the required elements. Id. Although paragraph 12 alleges that the Government made a promise, a promise, without more, is not a contract. Similarly, paragraph 17—which recites that the parties "entered into an agreement," Am. Compl. ¶ 17—on its own does not demonstrate the existence of a contract. Id. The remainder of the

complaint fails to set forth facts establishing the existence of the required elements: "It does not indicate *any* conduct demonstrating mutual intent by both parties to enter into a contract, such as the occurrence of negotiations or consultation," "[t]here is no allegation of a bargain between the parties upon which the Government . . . made a promise to Saddle Brook in exchange for its services," and it "fails to allege that the [Corps] ever made an unambiguous and unconditional offer . . . to perform flood remediation . . . for Saddle Brook at a set price." Id. at 18-19. Defendant thus concludes that plaintiff not only conceded the nonexistence of a written contract, but also has not alleged the existence of an implied-in-fact contract and therefore cannot invoke this court's jurisdiction pursuant to 28 U.S.C. § 1491(a)(1). Def.'s Br. filed Jan. 6, 2012, at 2-3.

Jurisdiction is predicated on an express or implied-in-fact contract between plaintiff and the Corps. Plaintiff, however, unequivocally has conceded that an express contract does not exist. See Pl.'s Br. filed Dec. 20, 2011, at 3. In seeking dismissal of plaintiff's complaint, defendant acknowledges that "Tucker Act jurisdiction over contract claims attaches quickly if the complaint contains well-pleaded, non-frivolous allegations of the existence of the contract at issue." Def.'s Br. filed Sept. 23, 2011, at 11 (citing Bank of Guam v. United States, 578 F.3d 1318, 1325 (Fed. Cir. 2009)). In Bank of Guam, 578 F.3d 1318, the plaintiff purchased bonds from the United States and did not dispute that the purchase created a contract between the parties. Id. at 1322. When the United States Territory of Guam levied a tax on the interest income that the plaintiff received from the bonds, the plaintiff brought suit against the United States, alleging that the United States breached a duty to exempt the bonds from taxation. Id. at 1322-23. The trial court dismissed some of the claims for lack of subject matter jurisdiction because it concluded that those claims were barred by the statute of limitations. Id. at 1323.

In reviewing the trial court's dismissal, the Federal Circuit explained that a plaintiff will survive a jurisdictional challenge by making "[a] well pleaded allegation of a breach of either an express or implied-in-fact contract" and filing suit within the applicable limitations period. Id. at 1325. The Federal Circuit noted that the plaintiff properly alleged that the United States breached a duty owed to plaintiff and timely brought its claims. Id. Accordingly, it reversed the dismissal for lack of subject matter jurisdiction. Id. However, the Federal Circuit has held that insubstantial allegations as to the existence of a money-mandating contract will warrant dismissal for lack of subject matter jurisdiction. See Rick's Mushroom Serv., 521 F.3d at 1343-44 (upholding trial court's determination that it lacked subject matter jurisdiction over breach of contract claim because neither contract nor other source of law provided plaintiff substantive right to recover money damages); see also Ridge Runner Forestry v. Sec'y of Agric., 287 F.3d 1058, 1060 (Fed. Cir. 2002) (affirming dismissal for lack of jurisdiction because allegations did not establish existence of valid contract between parties). As noted in Fisher, a plaintiff must "make a non-frivolous

allegation" that its claim is based on a money-mandating source of law. Fisher, 402 F.3d at 1172. If a plaintiff fails to do so or makes an insubstantial allegation, the court must dismiss the matter for lack of subject matter jurisdiction.

The allegations in plaintiff's Amended Complaint concerning the existence of an implied-in-fact contract are patently insubstantial. The complaint alleges that the Corps made promises to plaintiff, Am. Compl. ¶ 12, and that the parties entered into an agreement, Am. Compl. ¶ 17, but it fails to establish the elements necessary to demonstrate the existence of an implied-in-fact contract, such as a mutual intent to contract and an exchange of consideration. Plaintiff's complaint provides nothing more than bald assertions that the Corps made an agreement with plaintiff to alleviate the flooding issues along the Saddle River. Cf. Biltmore Forest Broadcasting FM, Inc. v. United States, 555 F.3d 1375, 1380 (Fed. Cir. 2009) ("The elements of an implied-in-fact contract are: '(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance[;] and (4) "actual authority" on the part of the government's representative to bind the government.'" (quoting Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc))). Having failed to allege the existence of a contract, plaintiff cannot identify any money-mandating source entitling it to the relief sought—a prerequisite for subject matter jurisdiction in this case.

V.  Jurisdiction based on a claim for promissory estoppel

Defendant recasts plaintiff's allegations as attempting to set forth a claim for promissory estoppel. Def.'s Br. filed Sept. 23, 2011, at 20. Defendant explains that a claim for promissory estoppel arises when a party alleges that a promisor made "'a promise [that] the promisor should reasonably [have] expect[ed] to induce action or forbearance on the part of the promisee . . . and which d[id] induce such action or forbearance.'" Id. (quoting Restatement (Second) of Contracts § 90(1) (2012)). After alleging that the Corps promised to remedy the flooding issues, plaintiff notes that, in reliance on the promises, it refrained from taking action to address the problems on its own. Id. Defendant contends that the Court of Federal Claims is not the appropriate forum for addressing the merits of such an argument because promissory estoppel claims "fall under the umbrella of implied-in-law contract claims that this Court does not possess jurisdiction to entertain." Id. (citing Lawndale Restoration Ltd. P'ship ex rel. Boulevard Realty Servs. Corp. v. United States, 95 Fed. Cl. 498, 506 (2010)).

Despite plaintiff's inability to identify the elements of an implied-in-fact contract, plaintiff does appear to have stated a claim based on a theory of promissory estoppel. Specifically, plaintiff alleges that the Corps made a promise to quell flooding issues plaguing plaintiff's property and residents, Am. Compl. ¶¶ 12, 17, and "reasonably could have been expected to know that Plaintiff would rely on these promises to [its] detriment if no action

was taken to follow through on the promises," id. ¶ 19.  Although plaintiff did not allege explicitly that it refrained from addressing the flooding problem on its own in reliance on the Corps's promise, it may be possible to infer plaintiff's forbearance because plaintiff did allege that the Corps had exclusive control of the Saddle River and "has made all decisions pertaining to the control, maintenance, repairs and management of th[e] [river]."  Am. Compl. ¶ 2.  Nonetheless, promissory estoppel theory does not fall within the jurisdiction granted to the court by the Tucker Act, and the Federal Circuit has been clear that "the government has not waived its sovereign immunity with regard to a promissory estoppel cause of action."  Jablon v. United States, 657 F.2d 1064, 1070 (Fed. Cir. 1981); see also Carter v. United States, 98 Fed. Cl. 632, 639 (2011); Craig-Buff Ltd. P'ship v. United States, 69 Fed. Cl. 382, 389 (2006).  Consequently, the court lacks subject matter jurisdiction over this matter.

VI.  Other bases for jurisdiction

Turning to plaintiff's bad-faith claim, defendant concedes that, under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (2006), the Court of Federal Claims has jurisdiction to adjudicate claims alleging bad faith in the administration and termination of a contract.  Def.'s Br. filed Sept. 23, 2011, at 21.  However, "[i]n the context of a non-CDA, Tucker Act contract claim . . . [plaintiff]'s bad faith claim is merely duplicative of its breach claim."  Id.  Without a contract, defendant concludes, "there are no contract provisions . . . that the United States could have breached," resulting in a bad-faith claim.  Id. at 21-22. This position is correct.

Finally, defendant contends that, even if the court had subject matter jurisdiction to hear the matter, it is without jurisdiction to afford the requested relief.  Id. at 22.  Plaintiff has asked the court to order specific performance of the alleged flood-remediation contract.  Id. (citing Am. Compl. ¶ 23).  As defendant explains, the Court of Federal Claims lacks general equitable powers; rather, it may only grant equitable relief where Congress statutorily has permitted it to do so, such as in the context of a bid protest.  Id. (citing Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029, 1036 (Fed. Cir. 1991)).  Consequently, the court cannot order specific performance of the alleged contract. Plaintiff also has demanded "'civil penalties . . . for losses incurred by its residents and infrastructure due to flooding.'"  Id. (quoting Am. Compl. ¶ 24).  Defendant notes that the Tucker Act grants the court jurisdiction over claims for liquidated and unliquidated damages, but argues that civil penalties are not damages.  Id.  As support for its argument, defendant cites the False Claims Act, 31 U.S.C. § 3729 (2006), pointing out that it distinguishes between civil penalties and damages.  Thus, defendant concludes, the court cannot provide any of the relief requested.  Id.  This position, too, is correct.

11

Insofar as other bases for jurisdiction may be present, plaintiff has not argued them. Under the law of the circuit, arguments not addressed by a party are deemed waived. See Novosteel SA v. United States & Bethlehem Steel Corp., 284 F.3d 1261, 1274 (Fed. Cir. 2002) (explaining that arguments not made in party's principal brief must be treated as waived "[a]s a matter of litigation fairness and procedure"); Ironclad/EEI v. United States, 78 Fed. Cl. 351, 358 (2007) ("[A]rguments not presented in a party's principal brief to the court are typically deemed to have been waived."). Thus, any additional arguments that plaintiff may have to support its position that this court possesses jurisdiction over its claims cannot be considered at this time.

VII. Transfer of plaintiff's complaint

The transfer statute requires that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631 (2006); see Jan's Helicopter Serv., Inc. v. FAA, 525 F.3d 1299, 1303-04 (Fed. Cir. 2008); Rodriguez v. United States, 862 F.2d 1558, 1559-60 (Fed. Cir. 1988); see also Faison v. United States, No. 11-404C, 2012 WL 11236, at *2 (Fed. Cl. Jan. 4, 2012); Fischer v. United States, 96 Fed. Cl. 70, 78 (2011). The Federal Circuit consistently has understood "[t]he phrase 'if it is in the interest of justice' [to] relate[] to claims which are nonfrivolous and as such should be decided on the merits." Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000 (Fed. Cir. 1987), cited with approval in LeBlanc v. United States, 50 F.3d 1025, 1031 (Fed. Cir. 1995). The Federal Circuit allows a trial court to order transfer without being asked by either party. Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1375 (Fed. Cir. 2005).

Plaintiff has requested retransfer to the federal district court if this court finds that it lacks subject matter jurisdiction over the transferred claims. Pl.'s Br. filed Dec. 20, 2011, at 5-6. Defendant contends that retransfer would not be appropriate because plaintiff cannot satisfy the criteria set forth in § 1631. Def.'s Br. filed Jan. 6, 2012, at 11. Defendant explains that, because the United States has not waived its sovereign immunity with respect to claims based on a theory of promissory estoppel, the federal district court—similar to this court—lacks jurisdiction over plaintiff's remaining claims. Id. The transferee court must be a court in which plaintiff's claims based on a theory of promissory estoppel initially could have been filed—a requirement for transfer. Because this predicate for transfer has not been demonstrated, this court cannot find that the federal district court is a court in which plaintiff's claims originally could have been filed. As such, the court will not retransfer plaintiff's complaint to the United States District Court for the District of New Jersey or to any other federal district court.

## CONCLUSION

Plaintiff has not met its burden to establish subject matter jurisdiction. The Tucker Act grants this court jurisdiction over claims against the United States based upon an express or implied-in-fact contract. Plaintiff has conceded that an express contract does not exist and does not make any substantial allegation in support of an implied-in-fact contract. Accordingly, defendant's motion to dismiss is granted. The requirements of 28 U.S.C. § 1631 have not been met and, therefore, transfer is not warranted.

Accordingly, based on the foregoing, the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED**.

No costs.

/s/ Christine O.C. Miller

_____
**Christine Odell Cook Miller**
Judge